IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

                                                          PLAINTIFF

TIMOTHY ODELL JOYCE


v.                        Civil No. 6:22-CV-06071-SOH-MEF


OFFICER MORGAN MURRAY
(Hot Springs Police Department); and
CHIEF OF POLICE CHRIS CHAPMAN
(Hot Springs Police Department)                           DEFENDANTS


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action filed under 42 U.S.C. § 1983.  Pursuant to the provisions of 28

U.S.C. § 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge,

referred this case to the undersigned for the purpose of making a Report and Recommendation.

Currently before the Court is Defendants' Motion for Summary Judgment.  (ECF Nos. 26, 27, 28).

## I.        BACKGROUND

Plaintiff is currently incarcerated in the Saline County Sheriff's Office.  Plaintiff filed his

Complaint on June 23, 2022.  (ECF No. 1).  After three Orders directing Plaintiff to submit an

Amended Complaint to address deficiencies in each Complaint (ECF Nos. 6, 8, 10), Plaintiff filed

his Third Amended Complaint (ECF No. 11) on September 1, 2022.

Plaintiff characterizes his first claim as one for "Excessive force and the Fourth

Amendment of the United States Constitution because I was stopped without any probable cause."

(ECF No. 11 at 4).  He alleges that on November 3, 2021, he was walking with his bicycle towards

traffic on Woodlawn Street and Summer Street when a police vehicle passed him.  He identifies

the driver as Defendant Murray.  (*Id.*).  He states Defendant Murray stopped at the intersection of

1

Summer Street and Freida Street and waited for him to walk close to his vehicle.  (*Id*. at 5).

Defendant Murray then rolled down his window to talk to him, but Plaintiff spoke first by asking

him "what do you want, I'm not bothering you and nobody called you concerning me so why are

you harassing me?"  (*Id*. at 5).  Plaintiff alleges Defendant Murray responded that he just wanted

to ask Plaintiff about the lights on his bicycle.  (*Id*.).  Plaintiff states that this confused him because

he was walking his bicycle, not riding it.  (*Id*. at 5-6).  Plaintiff explained that he had a white

colored light that would go from white to red, and asked the officer if he would like for him to

show him.  (*Id*. at 6).  Plaintiff alleges that Defendant Murray then "jumped out of his vehicle

pulled out his Taser and shot me in my back."  (*Id*.).  Plaintiff alleged he lost control of all bodily

function and fell to the ground, at which time other police officers jumped on his back and started

hitting him and yelling for him to stop resisting.  (*Id*.).  Plaintiff yelled that he was not resisting, at

which point Defendant Murray tased him again while the other officers were still on his back,

pulling his arms behind him and handcuffing him.  (*Id*.).  Plaintiff alleges he was taken to the

hospital and had x-rays taken.  (*Id*.).  He alleges he had pulled and bruised muscles.  He states he

is still having trouble and "a lot of pain" in his shoulder neck and arms.  (*Id*.).  He alleges he suffers

from post-traumatic stress disorder because of the "brutal and totally unnecessary attack."  (*Id*.).

Plaintiff proceeds against both Defendants in their individual capacity[1] only on this claim.  (*Id*. at

5).

Plaintiff's second claim also centers on November 3, 2021.  (ECF No. 11 at 7).  He appears

to allege that Defendant Chapmond failed to train his police officers, and as a result he was arrested

---

[1] Plaintiff checked the section of the form indicating he was only proceeding in the individual capacity.  In the section of the form which asks him to describe his official capacity claim, he repeated the claim that he was stopped without probable cause and excessive force was used against him.  (*Id*. at 5).

without probable cause and subjected to excessive force.  (*Id*.).  Plaintiff proceeds against both Defendants in their official and individual capacities on this claim.  (*Id*. at 8).  To support the official capacity claim, Plaintiff repeats his allegation that he was stopped without probable cause and excessive force was used against him.  (*Id*. at 8).

Plaintiff seeks compensatory damages in the amount of $500,000 for physical pain and suffering, as well as mental anguish.  (*Id*. at 10).

Defendants filed their Motion for Summary Judgment on April 6, 2023.  (ECF Nos. 26, 27, 28).  They state that Plaintiff was charged with the following criminal offenses based on his arrest on November 3, 2021: "Simultaneous Possession of Drugs and Firearms, a class Y felony; Possession of Firearms by Certain Persons, a class B felony; Possession of a Controlled Substance Schedule I/II – Methamphetamine or Cocaine, a class D felony; and Resisting Arrest, a class A misdemeanor in case 26CR-21-884."  (ECF No. 27 at 10).  Plaintiff was appointed legal counsel for his criminal case.  (*Id*. at 11).  The Defendants further note:

> On September 7, 2022, after conferring with counsel, Plaintiff entered negotiated pleas of guilty to the offenses of Possession of Firearms by Certain Persons, reduced from a class B felony to a class D felony; and Possession of a Controlled Substance Schedule I/II – Methamphetamine or Cocaine, also a class D felony.  In exchange, the State nolle prossed the charges of Simultaneous Possession of Drugs and Firearms and Resisting Arrest.  The Court determined that Plaintiff entered his plea knowingly, intelligently, and voluntarily, and Plaintiff was sentenced to six years' incarceration in the Arkansas Department of Corrections.  (*Id*. at 11).

Defendants argue that probable cause existed to stop and arrest Plaintiff.  (ECF No. 27 at 6-9).  Specifically, for several weeks prior to November 3, 2021, the Hot Springs Police Department received numerous calls and reports of suspicious activity and breaking and entering incidents in residential communities across the city.  (ECF No. 28 at 1).  Defendant Murray responded to two of these.  (*Id*.).

On the night in question, Defendant Murray and Officer Davis were in their respective patrol units around Woodlawn Street and Ranch Street, and they observed Plaintiff riding his bicycle in the left lane against the flow of traffic in violation of Ark. Code Ann. § 27-51-301. (ECF No. 28 at 2). They further observed he was operating his bicycle at night without a white forward-facing light in violation of Ark. Code Ann. § 27-36-220. (*Id*.). When the Plaintiff noticed that police vehicles were following him, he took a route involving several streets in an apparent attempt to evade police. (*Id*.). As Defendant Murray attempted to contact the bicycle rider, he noted that he was wearing clothing like that worn by a breaking and entering suspect seen in video from the previous day. (*Id*. at 3). Defendant Murray pulled up beside Plaintiff on Summer Street as he was walking his bike toward oncoming traffic. (*Id*. at 3). He asked about the bicycle lights. (*Id*.). Immediately upon Defendant Murray inquiring about the lights, Plaintiff became "verbally agitated" and began yelling. (*Id*. at 4). Defendant Murray then exited his patrol car to conduct a traffic stop. Plaintiff got on his bicycle and attempted to ride away, despite being issued several verbal commands to stay in place. (*Id*.). Defendant Murray then tazed Plaintiff, who continued to resist. Defendant Murray then drive-stunned him in the leg. (*Id*.). Plaintiff then complied and offered his hands to be handcuffed. (*Id*.).

Based on Plaintiff's guilty plea, Defendants argue the *Heck* doctrine bars Plaintiff from arguing that probable cause was lacking for his arrest on November 3, 2021. (ECF No. 27 at 10-11). They argue Defendant Murray did not employ excessive force against Plaintiff in the arrest. (*Id*. at 11-15). They also argue he is entitled to qualified immunity if the Court were to determine that he violated Plaintiff's constitutional rights. (*Id*. at 15-16). They argue Plaintiff failed to allege an individual capacity claim against Defendant Chapman (*Id*. at 17-18), and that Plaintiff failed to allege any official capacity claims (*Id*. at 18-22).

Defendants provided dash-camera and body-camera video of the arrest, which the Court has reviewed.  (ECF Nos. 28-4, 28-7).  At the beginning of the dash-camera video, it is dark and raining lightly.  Defendant Murray pulls up beside the Plaintiff.  (ECF No. 28-4 at 15:56).  Plaintiff is not in view of the dash camera.  As soon as the window is rolled down, and before Defendant Murray can speak, Plaintiff is heard yelling in a loud and hostile tone.  He yells "hold on" multiple times in rapid succession.  He then yells "what you doing!?  what you want!?"  Defendant Murray responds that he did not have lights on his bike.  There is more yelling by Plaintiff.  Defendant Murray then says, "don't walk away."  There is more yelling by Plaintiff.  At some point, Plaintiff appears to say he has a light and Defendant Murray asks to see it.  Defendant Murray then says "stop!  stop!"  There is yelling and screaming.  Defendant Murray repeatedly tells Plaintiff to put his hands behind his back and to "give me your hands."  Another police car pulls up.  At 17:06 on the video, Defendant Murray radios the station and reports that he has the Plaintiff in custody.  The time elapsed from when Defendant Murray pulled alongside the Plaintiff to when he radioed the station lasted just under two minutes.  The Court could hear the incident but could not see the initial interaction and handcuffing.  Plaintiff was yelling and hostile for the entire video.  Once in the squad car, Plaintiff continued to yell, complaining that he was tazed in the back for no reason and uttering a variety of profanities.  At 21:19 on the dash-camera video a Glock pistol was located on Plaintiff's leg.  At 23:37, the Plaintiff states, "I got warrants and shit."  At 32:22, a female voice states she checked his right shoulder, and it was little swollen, but there were no broken bones.  Based on the body-camera video, this was an EMT who was called to the scene.  (ECF No. 28-7 at 27:00).  The body-camera video provides corroboration of what was heard in the dash-camera video, although it was difficult to see details because it was dark.  Defendant Murray clearly told

Plaintiff to "stop" before tazing him.  Plaintiff never stopped yelling.  Defendant Murray had to tell Plaintiff to put his hands up repeatedly.

Plaintiff filed a Response and a Statement of Disputed Facts on May 3, 2023.  (ECF Nos. 33, 34).  Plaintiff's Response is two pages long and does not directly address Defendants' arguments.  (ECF No. 33).  Instead, Plaintiff cites the Restatement of Torts and two Arkansas state law cases.  Plaintiff argues that Defendant Murray only stopped and arrested him because he asked, "why are you harassing me?" and "what do want, man?"  (*Id*. at 2).  Plaintiff alleges Defendant Murray wanted to punish him for speaking to a police officer in this manner.  (*Id*.).  He makes no mention of Defendant Chapman.  Plaintiff does not refer to the summary judgment record in this document.  In his three-page Statement of Disputed Facts, Plaintiff does refer to the summary judgment record.  (ECF No. 34).  He does not, however, align his paragraphs with those contained in Defendants' Statement of Facts.  Instead, he argues that Defendant Murray tazed him, "kneeing, pulling of arms behind back while simultaneously kneeling on his neck." (*Id*. at 2).  He also argues Defendant Murray altered the videos and is "fabricating his story of events." (*Id*.).  In the Order directing Plaintiff to file his Response, he was advised that he must cite to the record.  (ECF No. 31).  Plaintiff was also advised that "[i]f [he] disputes any of the facts set forth by the Defendant in the Statement of Undisputed Facts, each numbered paragraph <u>must be identified</u> that contains the fact in dispute <u>and</u>, for each paragraph identified, explain <u>why</u> there is a dispute." (*Id*.).  Plaintiff was further advised that failure to do so would result in either all of Defendants' facts being deemed admitted or in the dismissal of his case.

Defendants filed their Reply on May 10, 2023, noting that Plaintiff has not met proof with proof, and his Statement of Facts is not in compliance with either Local Rule 56.1 or the Court's

Order.  (ECF No. 35).  They request that their facts be deemed admitted and the case dismissed. (*Id*. at 5).

## II.        LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.        ANALYSIS

### A.        Plaintiff's Failure to Comply with Local Rules

Local Rule 56.1(a) requires any party moving for summary judgment to submit a separate statement of undisputed material facts.  Local Rule 56.1(b) requires the non-moving party

opposing the summary judgment motion to file a separate statement of disputed facts. *Pro se* inmates are advised of this requirement in the Order directing them to file a summary judgment response. *Pro se* inmates are also advised of this requirement in the District's Prisoner Litigation Guide, which contains an example to help them understand the concept of using the same paragraph numbering as that used by the moving party in their own statement of disputed facts.

Due to Plaintiff's failure to do so, the Defendants' Statements of Facts is deemed admitted pursuant to Local Rule 56.1(c). In determining whether there are genuine disputes of material fact, however, the Court has also considered the allegations set forth in Plaintiff's verified Amended Complaint. A verified complaint is the equivalent of an affidavit for summary judgment purposes. *See, e.g., Roberson v. Hayti Police Dep't.*, 241 F.3d 992, 994-95 (8th Cir. 2001). "[A] complaint signed and dated as true under penalty of perjury satisfies the requirements of a verified complaint . . .." *Id*. As the Court in *Roberson* pointed out, "[a]lthough a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit to survive the summary judgment motion. *Id.* The Court will, therefore, "piece[] together [Plaintiff's] version of the facts from the verified complaint . . .." *McClanahan v. Young*, No. 4:13-cv-04140, 2016 WL 520983, *1 (D.S.D. Feb. 5, 2016).

**B.      Plaintiff's Probable Cause Claims are Barred by the *Heck* Doctrine**

Plaintiff was charged with four criminal offenses arising from his arrest on November 3, 2021. He was represented by counsel in his state criminal proceedings, and he pleaded guilty to two of the charges in case 26CR-21-884. He has not alleged that this conviction has been reversed, set aside, or otherwise terminated in his favor. As such, his claim that Defendant Murray lacked probable cause to arrest him is barred by the *Heck* doctrine. In *Heck v. Humphrey*, 512 U.S. 477,

486-87 (1994), the Supreme Court held that a claim for damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus."  Plaintiff's claim that Defendant Murray lacked probable cause to arrest him is barred by *Heck* because Plaintiff ultimately pled guilty to two offenses arising from his arrest.  *See also Sanders v. Fayetteville City Police Dep't*, 160 F. App'x 542, 543 (8th Cir. 2005), citing *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) (allegations that defendants lacked probable cause to arrest the plaintiff and brought unfounded criminal charges challenged validity of conviction and were *Heck*-barred); *Williams v. Schario*, 93 F.3d 527, 529 (8th Cir. 1996) (per curium) (false testimony and malicious prosecution claims are *Heck*-barred where they necessarily imply invalidity of conviction or sentence).  *Cf. Thurmond-Green v. Hodges*, 128 F. App'x 551 (8th Cir. 2005); *and Whitehead v. Garrett*, 2012 WL 3939967 (E.D. Missouri, Sept. 10, 2012). Under this body of law, Plaintiff may not employ the civil rights statutes as a substitute for *habeas corpus* relief.   In other words, Plaintiff cannot seek relief pursuant to § 1983 which would undermine or potentially invalidate his criminal charges, convictions, and subsequent confinement.  *See, e.g., Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Preiser v. Rodriquez*, 411 U.S. 475, 500 (1973) (*habeas corpus* is the sole federal remedy for prisoners attacking the validity of their conviction or confinement).

Defendants are entitled to summary judgment as a matter of law on this claim.

### C.    No Evidence of Excessive Force

Plaintiff alleges Defendant Murray employed excessive force when he arrested him.  "The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers."  *Thompson v. Monticello, Ark.*, 894 F.3d 993, 998 (8th Cir. 2018) (cleaned up).  "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances."  *Coker v. Ark. State Police*, 734 F.3d 838, 842 (8th Cir. 2013) (cleaned up).  This determination is made without regard to the officer's subjective intent or motivation.  *Zubrod v. Hoch*, 907 F.3d 568, 575 (8th Cir. 2018) (quoting *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012)).

In evaluating an excessive force claim under the Fourth Amendment, a court must consider whether the force was objectively reasonable under the circumstances, "rely[ing] on the perspective of a reasonable officer present at the scene rather than the '20/20 vision of hindsight.'"  *Carpenter v. Gage*, 686 F.3d 644, 649 (8th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386 (1989)).  The application of this standard requires careful attention to the facts and circumstances of each individual case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.  *Graham*, 490 U.S. at 396.  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving – about the amount of force that is necessary in a particular situation."  *Id*. at 396-397.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  *Foster v. Metropolitan Airports Comm'n*, 914 F.2d

1076, 1081 (8th Cir. 1990) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d. Cir. 1973)).  To conduct an arrest, some degree of force is necessary.  Therefore, the fact that force is used during an arrest does not ipso facto establish a Fourth-Amendment violation.  *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003) ("Fourth Amendment jurisprudence has long recognized…the right to make an arrest…necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.") (internal quotation marks and citation omitted).

Here, Defendant Murray and other officers were investigating a spate of residential break-ins in the area.  The Plaintiff took evasive action on his bicycle when he noticed the police cars and that they were following him.  Plaintiff admits he did so in his deposition.  (ECF No. 28-3 at 49).  Once stopped, Plaintiff was immediately hostile and yelling.  He admits in his deposition that he was "agitated" because they were "harassing him when he had done nothing wrong."  (ECF No. 28-3 at 51).  He then ignored a verbal command not to walk away and attempted to flee, ignoring repeated commands to stop.  Plaintiff admits in his deposition that he got on the bicycle and attempted to leave.  (ECF No. 28-3 at 32, 33-34).  Plaintiff disputes that Murray ever told him to stop, but this is contradicted by the video evidence.  He was then shot with the tazer.  Once stopped by the initial tazer shot, the audio indicates he continued to resist arrest, refusing to give his hands for handcuffing.  This resulted in a drive-stun with the tazer.  In his deposition, Plaintiff states he was not resisting, his body had just tensed up due to the first tazer shot.  (ECF No. 28-3 at 33).

The incident was short, with just under two minutes elapsing from the stop to the time when Plaintiff is handcuffed.  Finally, although Plaintiff testified that he received x-rays at the Garland County jail after the incident (ECF No. 28-3 at 38), he has provided no evidence for the summary judgment record to indicate that he suffered anything more than *de minimis* injury from the arrest.  In his deposition he was asked if, other than LifeNet coming out to the scene, had he

11

received any treatment for any condition or injury claimed as a result of the tazing, and he replied "No." (ECF No. 23-8 at 40). Discussion amongst the officers on the video indicates Plaintiff fell off his bike and into a real estate sign when shot with the tazer. Defendants have produced video indicating an EMT removed the tazer probes on the scene, and in the video the EMT states she found a slightly swollen shoulder with no broken bones. The incident was reviewed internally and the tazer was found to be a necessary and appropriate use of force which did not violate department policy. (ECF No. 28-6).

Based on the summary judgment record before the Court, it is undisputed that Plaintiff was hostile, agitated, and non-compliant just prior to his arrest. He took evasive action to avoid officers prior to the stop, attempted to flee after contact despite multiple commands to stop, and he was tazed to prevent flight and effect an arrest. This is a reasonable use of force. *See McKenney v. Harrison*, 635 F.3d 354, 360 (8th Cir. 2011) (when a suspect makes an active attempt to flee, officers are entitled to use a tazer to prevent suspect's escape and effect the arrest).

Thus, Plaintiff's claim of excessive force on November 3, 2021, is blatantly contradicted by the summary judgment record such that no reasonable jury could believe him. There is no genuine dispute as to any material fact for this incident, and the Defendants are entitled to judgment as a matter of law.[2]

### IV.    CONCLUSION

Accordingly, it is recommended that Plaintiff's Third Amended Complaint (ECF No. 11) be DISMISSED WITH PREJUDICE.

---

[2] As there was no violation of Plaintiff's constitutional rights by Defendant Murray, there is no need to address his allegation that Defendant Chapman failed to train Murray.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1st day of February 2024.

/s/ *Mark E. Ford*
_____
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE